In the Matter of the Estate of John B. Manley,
Fletcher G. Manley, Claimant.
Estate of C. G. Staples, Appellant.

January Term, 1942.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and
Jeffords, JJ.

Opinion filed February 3, 1942.

*Barber & Barber* and *Harold E. Staples,* Administrator, *pro se,* for appellant.

*Gibson & Gibson* (*A. Luke J. Crispe* on brief) for claimant

MOULTON, C. J.   The only issue here is whether the appellant, Harold E. Staples, as administrator of the estate of Charles G. Staples, deceased, is a person interested in a decree of distribution made by the Probate Court for the District of Marlboro in the Estate of John B. Manley, deceased, and as such entitled to an appeal therefrom under the provisions of P. L. 3005.   On the motion of the claimant Fletcher G. Manley, son of John B. Manley, the County Court dismissed the appeal, and the cause is here upon the appellant's exception to this ruling.

These are the undisputed facts: John B. Manley died testate, and his will was duly admitted to probate.   By the seventh paragraph thereof a certain part of the estate was given to the Brattleboro Trust Company in trust, the income to be paid to the testator's sons, until they should, respectively, reach the age of twenty-five years, and it was provided that "When my said sons respectively reach the age of twenty-five years, if they respectively, are then in good financial standing and not in debt, then I give and bequeath to such as meet such condition, one-half of his said share above named, and other one-half of each said share is to be held in trust, as aforesaid until my said sons, respectively, arrive at the age of thirty years; and during that time, the use, interest and income from each share to be paid, as fast as it is received by my said trustee, to each son entitled thereto as aforesaid. * * * But if any of my sons is not in good financial standing and is not free from debt when he arrives at the age of twenty-five years; then the whole of his share is to remain in trust and the income therefrom to be paid to him as aforesaid, until such time as he is in good financial standing and free from debt, when said one-half of said share shall be paid to him. * * *"   There are also provisions, not material here, as to the other one-half, which was to be paid under similar conditions to each son when he became thirty years of age.

The eleventh paragraph of the will is as follows: "It is my desire that my children shall derive benefit from my estate, and that they shall be thrifty, industrious and saving, and it is therefore my will that neither the principal nor the income of a share of any of my said children shall be liable for any debts owing by him or her, nor for any debts that may be hereafter contracted by him or her, and that none of my said children shall anticipate

his or her principal or interest, of his or her share, nor shall assign, transfer or hypothecate the same, and it is my will that my said trustee shall not recognize, accept or honor, any order, transfer or assignment of any part of the income or principal, of the share of any of my said children in my estate.''

In spite of the foregoing prohibition against assignment or hypothecation the claimant on October 19, 1935, executed and delivered to Charles G. Staples, an instrument, the material parts of which are: ''I * * * do hereby sell, assign, transfer and convey to said Charles G. Staples, all my right, title and interest in and unto such portion of the principal of the estate of my father, John B. Manley, as may be necessary to pay and discharge any indebtedness now due and owing from me to said Charles G. Staples, and for any and all indebtedness hereafter accruing. * * * This assignment is made for the purpose of securing said Charles G. Staples for such loans as he may make to me from time to time, and the principal of my share in my father's estate is hereby intended to be pledged as collateral security for the repayment of said loans to said Charles G. Staples.''

It may be inferred that the claimant did not fulfill his father's desire that he should be thrifty, industrious and saving. In November, 1939, he filed a petition in bankruptcy, listing secured claims in the amount of $2950. and unsecured claims amounting to $21,256.73. Among the latter was an indebtedness to Charles G. Staples of $2300., with the notation ''Charles Staples held an attempted assignment on debtor's inheritance held in trust. However, debtor claims this assignment is void.'' Under the schedule of property held in reversion, remainder or expectancy, including property held in trust for the benefit of the debtor, there is listed the trust fund under the will of John B. Manley, ''which trust fund the debtor has no right to neither has he the right to dispose of or charge it with debts,'' and in the schedule of property claimed to be exempt appears the debtor's interest in the trust fund. The claimant was adjudged a bankrupt on December 8, 1939, and at that time he had not paid Charles G. Staples, and the indebtedness, evidenced by three promissory notes, dated respectively October 19, 1935, September 8, 1936, and December 17, 1936, was an outstanding obliga-

tion. Whether anything has been paid thereon by a dividend from the bankrupt's estate does not appear. On May 6, 1940, he received his discharge in bankruptcy. On October 19, 1940, the Probate Court allowed the account of the Brattleboro Trust Company, as trustee, found that the claimant had reached the age of twenty five years, and was in good financial standing and free from debt, and ordered the trustee to pay to him one half of his share in his father's estate. It is from this order that the appeal was taken.

The appellant is rather vague in the statement of what he alleges to be the nature of the interest that entitles him to an appeal. In his brief it is said that "it is not necessary at this stage to determine *exactly* what rights the Staples Estate possesses, the only question now material being the question whether or not the Staples Estate at the time of its appeal had *any* interest, present or future, consummate or inchoate, which it was entitled to protect by the taking of any appeal. In other words, did the Staples Estate, as the result of the assignment made by the claimant, have *either* presently or in the future any possible interest in the property held in trust under the will of John B. Manley."

▮ The rule is, however, that the interest required to support an appeal from a decree or order of the Probate Court under P. L. 3005 must be a legal interest which may, by such order or decree, be either enlarged or diminished. *Lyons Ex'x* v. *Field, Trustee,* 106 Vt. 474, 477, 175 Atl. 11; *Simonds* v. *Simonds' Estate,* 96 Vt. 110, 111, 117 Atl. 103, 28 A. L. R. 420; *Peck's Adm'r* v. *Peck's Adm'r,* 91 Vt. 91, 96, 99 Atl. 635; *In re Clark's Estate,* 79 Vt. 62, 65, 64 Atl. 231, 118 Am. St. Rep. 938; *In re Varnum,* 70 Vt. 147, 149, 40 Atl. 43. It remains to consider whether this is the case here.

▮ The appellant contends that this interest consists in part in a right to be heard on the question whether the claimant is in good financial standing and free from debt, because, as his counsel says with commendable candor, if the delivery of the trust fund can, by his efforts, be prevented or delayed, the claimant, in order to hasten his possession of it, may be induced to take steps to discharge the unpaid notes. It is sufficient to say that we do not regard the nuisance value of such a procedure as an interest recognized by the statute.

■ Although he does not distinctly say so, we take it that the appellant claims to have title to the trust fund, and that it should have been decreed to him to the amount of the unpaid notes. He insists that the assignment of the claimant's rights to the principal of the fund was always fully effective and valid. In *Huestis* v. *Manley*, 110 Vt. 413, 420, 8 Atl. 2d. 644, 647, this same trust was before us, and we held that it was a spendthrift trust, and said that "neither the corpus nor the income of such a trust while in the hands of the trustee is subject to attachment or trustee process in an action at law by a creditor of the beneficiary." It is true that in that case the issue was whether the income, before payment to the beneficiary was subject to trustee process, and for this reason the appellant argues that what was said concerning the corpus was *obiter,* and should not be followed here. But, *dictum* or not, the statement was made advisedly. In view of the provisions of the eleventh paragraph of the will, it cannot be doubted that it is correct. The principal of the fund was held upon a spendthrift trust. And both trustee and beneficiary were bound by the prohibition against alienation, which it was within the power of the testator to make. *Barnes* v. *Dow,* 59 Vt. 530, 542, 10 Atl. 258.

It is also argued that although the assignment may have been temporarily unenforceable during the existence of the trust, it was not void, but, when the trust terminated and the legal title vested in the beneficiary, it became operative and effective after the analogy of title by estoppel. The discharge in bankruptcy, it is said, barred recovery of the debt, but left the assignment, which had been given as collateral security, unimpaired.

■■ The duties which a testamentary trustee must perform in the management of the trust estate are prescribed by P. L. 3041 to be those specified in the required bond, and among them are "To settle his accounts with the probate court at the expiration of his trust, and to pay over and deliver the estate and effects remaining in his hands, or due from him on such settlement, to the persons entitled to the same, according to law and the will of the testator." P. L. 3023, IV. In the absence of a finding to the contrary it is to be assumed that the statutory bond was filed in this case.

■ By the terms of the trust the trustee was unequivocally

directed to deliver the fund to the claimant at the specified time, and it could not do otherwise and act in accordance with the will of the testator. We construe the will to mean that the prohibition against the recognition of an assignment should continue until the time when this should be done. The Probate Court, being a court of limited and special jurisdiction, having only the authority prescribed by statute (*White's Adm'r* v. *White,* 91 Vt. 75, 77, 99 Atl. 305; *Barber* v. *Chase,* 101 Vt. 343, 354, 143 Atl. 302), could not, under the circumstances, have made a different order. The testator had the right to direct that the property should go to the claimant to the exclusion of the latter's alienees and creditors (*Huestis* v. *Manley,* 110 Vt. 413, 419, 8 Atl. 2d. 644; *Manders* v. *Mercantile Trust and Deposit Co.,* 147 Md. 448, 128 Atl. 145, 147) and his intent that this should happen was clearly expressed.

It is true that when the purposes of a trust have been fulfilled and nothing remains for the trustee to do but to pay over the fund to the beneficiary, and he neglects to do so, the beneficiary may maintain an action at law against him for the recovery of the trust estate. *Dieter* v. *Scott,* 110 Vt. 376, 389, 9 Atl. 2d. 905; *Reed* v. *Hendee,* 100 Vt. 351, 354, 137 Atl. 329; *Snyder* v. *Parmalee,* 80 Vt. 496, 499, 68 Atl. 649; *Parker* v. *Parker,* 69 Vt. 352, 354, 37 Atl. 1112. But this principle can not be invoked to compel the trustee of this spendthrift trust to deliver the corpus, or any part of it, to the appellant, in opposition to the terms of the will. Whether the appellant has any rights under the assignment against the claimant, after the latter has received the property, is a question which we need not consider.

It follows that the appellant has not shown such an interest as will support an appeal. The motion to dismiss was properly granted.

*Judgment affirmed.*